KAMINITSKY v. NORTHEASTERN RAILROAD COMPANY.

1. In action against a railroad company for injuries sustained by plaintiff from a passing train of defendant at a highway crossing, *prima facie* proof of negligence on the part of the defendant is sufficient to compel the judge to send the case to the jury, and *prima facie* proof of contributory negligence on the part of the plaintiff is not sufficient to withdraw the case from the jury : because, whether the plaintiff contributed to the negligence or not is a fact which no judge should determine on *prima facie* evidence.

2. Contributory negligence is a matter of defence with the burden on defendant of proving it. To relieve the defendant from all liability in this case, the proof of contributory negligence on plaintiff's part should have been clear and convincing.

3. A failure by the Circuit Judge to grant a non-suit upon a point not brought to his attention can hardly be ruled as error.

4. The requirements of the statute law as to signals at a railroad crossing, and to be given by an engine on approaching a crossing, did not supersede other proper signals, nor give a new cause of action under these statutes ; therefore, in an ordinary action for damages, alleging negligence, the omission of these signals may be given in evidence, although not alleged in the complaint.

5. Sections of the General Statutes requiring a railroad engine to carry a bell of a certain weight and to give certain signals at a road crossing (§ 1483), and holding the company liable for all damages caused by the collision, if a failure to give such signals contributed to the injury, unless the person injured was guilty of gross or wilful negli-

gence, which contributed to the injury, or was acting in violation of law (§ 1529), are not unconstitutional.

6. The codification of the statutes adopted in 1882 under the requirements of the constitution, and known as the *General Statutes*, is valid, notwithstanding it did not relate to but one subject, and was without a title.

7. It is within the power of the legislature to enact laws regulating the running of railroad trains across public highways, and declaring the omission of prescribed signals to be negligence.

8. Where the judge states to the jury only a part of the testimony, the verdict will not be set aside for that reason. In the conduct of a cause below, something must be left to the judgment and impartial discretion of the trial judge.

9. It was not error to charge "that it is not material in law whether the injury results from direct collision, or the damage is done by the injured one being thrown under the train without actual collision with the wagon."

10. Section 195 of the Code gives a defendant no right to ask relief from a judgment obtained against him after a trial at which he was present.

Before PRESSLEY, J., Charleston, June, 1885.

The opinion sufficiently states the case.

*Messrs. Simonton & Barker*, for appellant.

*Messrs. A. D. Cohen* and *James Simons*, contra.

April 24, 1886.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   This was an action against "The Northeastern Railroad Company" to recover damages for a personal injury. The plaintiff complained: "That on April 25, 1883, while travelling in a wagon drawn by one horse along the public highway leading to the city of Charleston, which public highway crosses the railroad at a place called the crossing of the Meeting street road, near the place known as the forks of the road, and as the plaintiff had reached said crossing, the defendant carelessly and negligently caused one of the locomotives, with a train of cars attached thereto, to approach said crossing, and then and there to pass rapidly over the track of the said railroad. That by reason of the said negligence of the defendant, the plaintiff's legs were injured by the said train of the defendant, rendering

the amputation of both necessary. That thereby he has been most seriously injured for the balance of his life, and debarred from following any active pursuit, to his damage thirty thousand dollars." The defendant corporation put in a general denial, affirming that the train was not run negligently, as charged, and denying that, by reason of said negligence of the defendant, the plaintiff's legs were injured by the said train of the defendant, or that he was at any time or in any way injured by the negligence or carelessness of the defendant.

The cause came on for trial before Judge Pressley and a jury. There was much testimony, which need not be stated here, as it is all printed in the "Case." In brief, it appeared that the track of the Northeastern Railroad, in leaving Charleston, runs nearly north up the neck of land lying between the Ashley and Cooper Rivers, and a little beyond the city limits crosses a public highway at the same level, sometimes called the State Road, and at others the Meeting street road, along the centre line of which is a plank road running to the city. The crossing is at the point where the Magnolia avenue branches off from the Meeting street road, nearly at right angles, and runs eastward towards the cemetery, and probably for that reason called "Magnolia Crossing." The course of the railroad being nearly identical with that of the highway, the crossing is made very obliquely, creating two angles, one pointing towards the city and the other in the opposite direction, the railroad track constituting the long side of both. It will be seen at a glance that a train going towards the city necessarily closes the eastern angle and widens the other, and *vice versa*. At the time of the occurrence complained of, there was a brick wall or abutment on each side of the Meeting street road just above the crossing, not leaving room enough between the eastern abutment and the track of the railroad for a vehicle to turn into the mouth of Magnolia avenue without coming very close, if not touching the railroad. The Enterprise Street Railroad also runs to this crossing and turns down Magnolia avenue towards the cemetery.

Seeing this state of things, the legislature, in 1878, passed an act to provide further security for persons and property at the thoroughfare into the city of Charleston at and near the fork of

the road on Charleston neck, as follows: "Whereas the only entrance by land into the city of Charleston is by a narrow neck traversed by one public road, which crosses at the same point the tracks of the South Carolina Railroad Company and of the Northeastern Railroad Company; and whereas the constant passage of persons and of vehicles over said thoroughfare makes this place more than usually dangerous; be it enacted, &c., That from and immediately after the passage of this act the South Carolina Railroad Company and the Northeastern Railroad Company shall each cause the place where each of their railroad tracks crosses the State road at and near the fork of the road on Charleston neck, to be constantly guarded by a person of care and discretion whose duty it shall be, in the day time by a flag and in the night time by a lantern, to give notice of the approach of a locomotive or train on the railroad guarded by him, and to continue giving such signal until the said locomotive or train has passed the crossing." 16 *Stat.*, 363.

On the evening the plaintiff received the injuries of which he complains, he and another gentleman (Rubin) in a one-horse wagon, driven by a colored lad, about sun-down, or possibly a little later, were coming down the plank road towards the city, and just as they reached the point of the angle made by the plank road and the railroad track, opposite the entrance of Magnolia avenue, a long freight train passed rapidly down towards the city. In some way a collision occurred and the wagon was upset, the parties were thrown out, Rubin had his arm broken, and the plaintiff received the fearful injuries which rendered the amputation of both legs necessary, and for which he now claims damages. Some point was made as to whether the injuries were caused by some part of the train striking the right side of the wagon, or by the horse running away and striking the left wheel of the wagon against the brick abutment, as he endeavored to turn from the passing cars into the avenue; but the main question was, whether the injuries were caused, as charged, by the carelessness and negligence of the defendant; and if so, whether there was such contributory negligence on the part of the plaintiff as to prevent his recovery.

At the close of the plaintiff's testimony the defendant moved

for a non-suit, on the ground that the evidence did not prove neg-
ligence on the part of the defendant, but, on the contrary, showed
contributory negligence on the part of the plaintiff; and that
section 1529 of the General Statutes, which, as it was alleged,
places railroad corporations before the courts under a rule of evi-
dence or of legal liability other than that applied to natural per-
sons under like conditions, is unconstitutional and void.    The
judge refused the motion and the defendants made their defence.

The defendant proposed no requests to charge, but the plaintiff
made several, some of which were refused and need not be stated,
but the following were allowed :

I.  "That by the act of 1878 the defendant is required to cause
the place where its railroad track crosses the State road, at or
near the fork of the road on Charleston neck, to be constantly
guarded by a person of care and discretion, whose duty it shall
be, in the day time by flag and in the night time by a lantern, to
give notice of the approach of a locomotive or train on the rail-
road guarded by him, and to continue giving such signal until
the said locomotive and train has passed the crossing.

II.  "That if the testimony satisfies the jury that the require-
ments of the act were not complied with, or imperfectly complied
with, and such failure contributed to the casualty, then from
such failure the jury can find that the defendants were negligent.

III.  "That by the statute law of this State the railroad com-
pany is required to have a bell of at least 30 pounds weight and
a steam whistle placed on each locomotive engine, and such bell
shall be rung or such whistle sounded by the engineer or fireman,
at the distance of at least 500 yards from the place where the
railroad crosses any public highway or street or travelled place,
and be kept ringing or whistling until the engine has crossed
such highway or street or travelled place.   *Gen. Stat.*, § 1483.

IV.  "That if the testimony satisfies the jury that the plaintiff
was injured in his person by collision with the engine or cars of
the defendant at the crossing in question, and it appears that the
corporation neglected to give the signals required by section
1483, and that such neglect contributed to the injury, the
defendant corporation is liable for all damages caused by the
collision   *   *   unless it is shown that in addition to a mere

want of ordinary care the person injured was at the time of the collision guilty of gross or wilful negligence, or was acting in violation of the law, and that such gross or wilful negligence or unlawful act contributed to the injury. *Gen. Stat.,* § 1529."

After a very full and clear charge, the jury, on June 27, 1885, rendered a verdict in favor of the plaintiff for $7,500, and thereafter, on August 3, the defendant made a motion on the minutes of the court "for a new trial upon several grounds," alleging that parts of the charge, indicated and copied, were calculated to mislead the jury, and that the preponderance of the evidence was on the side of the defendant; and also "that the judgment upon the verdict be arrested on the ground that the complaint does not state specifically the facts required by the statute, to fix the liability of the defendant, and cannot therefore support the judgment." The judge refused the motion for a new trial, saying : "As to my charge I have read it most carefully, and it seems to me throughout to lean slightly to the side of defendant. It was not so intended," &c. He also refused the motion in arrest of judgment, saying : "The complaint contains allegations entirely sufficient to sustain the verdict ; and when that is so, I do not know of any case which authorizes the arrest of judgment after verdict."

The defendant appeals to this court from the verdict and judgment and rulings of the presiding judge. The exceptions are long and numerous, containing 22 principal heads, with half as many more additional subdivisions. They are all in the brief and need not be restated here.

First. As to the alleged error in refusing to grant the nonsuit. The judge held that *"prima facie* proof of negligence on the part of the defendant is sufficient to compel the judge to send the case to the jury, and *prima facie* proof of contributory negligence on the part of the plaintiff is not sufficient to withdraw the case from the jury, because whether the plaintiff contributed to the negligence or not is a fact which no judge should determine on *prima facie* evidence." It seems to us that this ruling was correct in principle, and in accordance with the decided cases in this State. "The defendant is entitled to a non-suit when there is a total failure of evidence to sustain the plaintiff's case ; but if

there is any testimony, the force and effect of which must be determined, the case should go to the jury." *Carter* v. *C. & G. R. R. Co.*, 19 *S. C.*, 20.

In reference to that class of cases where damages are claimed for negligent injuries, this court in the case of *Couch* v. *C., C. & A. R. R. Co.* (22 *S. C.*, 562), held as follows: "In considering such an issue is it necessary that every case in which there is any testimony as to facts should be sent to the jury? As we understand it, negligence is not a simple fact in itself, but is rather an inference from facts. It is defined to be 'want of ordinary care,' and is generally understood to be a mixed question of law and fact. It is certainly the duty of the judge to define what it is; and it seems that it is also his right to determine as a preliminary question, whether there is any evidence to make a *prima facie* case, and if not he may grant a non-suit. *Carter* v. *C. & G. R. R. Co.*, 19 *S. C.*, 23. In other words, as some one has expressed it, it is for the judge to say whether there are any facts in evidence, from which negligence may be reasonably and legitimately inferred, and it is for the jury to say whether from these facts, when submitted to them, negligence ought to be inferred. *Hooper* v. *C. & G. R. R. Co.*, 21 *S. C.*, 541; *Pierce R. R.*, 313; *Pleasants* v. *Fant*, 22 *Wall.*, 122." This is the utmost extent to which we have gone or can go, in ruling that a judge may determine the force of testimony upon a question of fact. In this case the judge held that there was a *prima facie* case of negligence on the part of the defendant, and sent it to the jury. In that we see no error.

The question of contributory negligence is secondary, and does not arise until there is some proof of negligence on the part of the defendant. It is a matter of defence, and the burden of proving it is with the defendant. *Carter* v. *C. & G. R. R. Co., supra; Crouch* v. *C. & G. R. R. Co.*, 21 *S. C.*, 495. In the case of Carter the court say: "Where the plaintiff has contributed to the accident to the extent of furnishing a proximate cause thereof, the defendant is exempt from liability as matter of law, and the judge should so charge; but whether a particular fact, if proved, shall amount to such contribution, is a matter for the jury, and not for the court. What is negligence, is defined in the

books, and is a question of law, and it is the same whether it comes from the defendant or the plaintiff; but whether it is proved to be present in a special case, is a question of fact for the jury."

The plaintiff had the right to pass down the plank road, a public thoroughfare. It was not an illegal act to return home from his business; and if in doing so he was negligently injured by the defendant, we agree with the Circuit Judge, that the proof of contributory negligence on his part, in order to have the effect of dispensing the law and absolving the defendant from all liability, was required to be clear and convincing. It is not to be assumed that a man in his senses will heedlessly imperil his own life. The question of carelessness on the part of the plaintiff was stoutly contested, and after reading the testimony with great care we cannot say that the judge erred in declining to take it from the jury. "Culpable negligence of the plaintiff, properly so called, which contributed to the injury, must always defeat the action, but the nature of the primary wrong has much to do with the judgment, whether or not the alleged contributory fault was blameworthy. If it was of a negative character, such as lack of vigilance, and was itself caused or would not have existed, or no injury would have resulted from it but for the primary wrong, it is not in law to be charged to the injured one, but to the original wrong-doer." *Wabash & St. L. R. R. Co. v. Central Trust Co. of N. Y.*, 23 *Fed Rep.*, 738.

But subdivision *a*, exception 3, still further alleges error in refusing the non-suit, "Because the proof offered by the plaintiff attempted to show that defendant was liable because of the alleged omission of certain statutory signals, and was addressed wholly to these issues; whereas the complaint alleged no fact constituting a cause of action arising out of any one of such statutory requirements." The motion for non-suit was made at the close of the plaintiff's testimony, and this ground at that time was not taken. We could hardly rule it error in the judge because he failed to grant a non-suit on a point not brought before him. But we think the counsel for the defendant does himself injustice in the suggestion that the omission may have

been caused by his own oversight.    If the point had been made, it could not have been sustained as a ground for non suit.

We do not consider this as an action under the act of 1878, requiring a guard to be kept at the crossing, or under the provisions of the railroad law contained in sections 1483 and 1529 of the General Statutes; but as an ordinary action for damages, with the right to show in evidence the precautions on the part of the defendant required by the said statutes.    The common law required the giving of such signals at highway crossings as were reasonable in view of the situation and surroundings "to put individuals using the highway on their guard." *Pierce R. R.*, 349, and notes.    The signals required by the aforesaid statutes did not supersede these reasonable signals which were before necessary.    They did not take away the common law right of action, by giving in lieu thereof a new cause of action under the statutes, but simply declared what were proper signals, and expressly made them "cumulative."    See *Gen. Stats.*, § 1545, and *Pierce*, 350.

The very circumstance that they are declared to be "cumulative" merely, makes this case essentially different from that of *Williams* v. *Hingham & Quincy Bridge & Turnpike Corporation* (4 *Pick.*, 341), relied on in the court below and in the argument here.    That was a case for damages on account of an injury at a toll bridge.    The general turnpike laws of Massachusetts had the effect of repealing the common law upon the subject, and made the proprietors of a toll bridge liable for damages only to those from whom toll was demandable.    The plaintiff did not allege in his declaration that he was one of those from whom toll was demandable, but had a verdict for $600.    The court held that the judgment must be arrested, on the ground that the common law remedy had been repealed, and the plaintiff had not brought his action within the terms of the statute authorizing damages.

But in this case the exact opposite is true.    The old remedy was not changed or repealed, but expressly affirmed with the additional precautions deemed necessary.    It will not do to say that all other signals were dispensed with by those expressly directed, and if the complaint charging negligence does not refer

specifically to them, there can be no recovery at all for a failure
to give proper warning.   If, considering the exceptionally
dangerous character of the place, the signals required and habit-
ually given were proper, the failure to give them might be negli-
gence without reference to the statute, and in that view it was
sufficient for the complaint to allege generally that the injury
was caused by the defendant carelessly and negligently, &c.
*Gibbes* v. *Beaufort*, 20 *S. C.*, 213.   The judge says: "No
motion was made to exclude testimony.   There was no request to
charge the jury that the acts of negligence set forth in the statute
were not applicable to the complaint.   The case was contested in
the proofs and arguments on both sides as if the case were under
the statute; and after such waiver it is now too late to raise the
point.   If it had been raised at the proper time, and I had felt
bound by the case cited from Massachusetts, I would still have
sent the case to the jury as a question of fact, whether without
the statute any omission of any of the signals relied on by
plaintiff, if proved, was not a want of due care under the circum-
stances of the case."   We cannot say that this was error, or that
there was any error in refusing the non-suit.

Exception 3, b, c, d, e, as also 14, relate merely to facts and
the preponderance of evidence, and, while they may have been
proper before the judge on motion for a new trial, cannot be
considered here.

Exceptions 4, 5, 6, 7, 8, and 9, in different forms, in effect
make the question as to the constitutionality of sections 1483
and 1529, General Statutes (general railroad law).   Section 1483
requires a bell of a certain weight and a steam whistle to be
placed on each locomotive engine, and that such bell shall be
rung and such whistle sounded by the engineer or fireman at the
distance of at least five hundred yards from the place where the
railroad crosses any public highway, &c.   Section 1529: "If a
person is injured in his person or property by collision with the
engine or cars of a railroad corporation at a crossing, and it
appears that the corporation neglected to give the signals required
by this chapter (chap. XL., general railroad law), and that such
neglect contributed to the injury, the corporation shall be liable
for all damages caused by the collision,   *   *   unless it is shown

that, in addition to a mere want of ordinary care, the person injured or the person having charge of his person or property, was, at the time of the collision, guilty of gross or wilful negligence, or was acting in violation of the law; and that such gross or wilful negligence, or unlawful act, contributed to the injury," &c.

The judge said: "The question of the constitutionality of that act is raised, and the argument upon that point would impress me very deeply if this were a matter of business which the railroad company had the right to carry on without the license of the legislature. If they were conducting a business as individuals do. without any license from the legislature, this thing of special legislation would not be allowed; but I hold that where the business was carried on by license of the legislature, and could not be carried on without that license, the legislature is not guilty of special legislation when it attaches conditions to that license. One of the conditions attached in this case is, that if it fails to do certain things, to give certain signals, it shall be responsible for the consequences, unless it proves gross negligence on the part of the party injured," &c. Was this error?

No weight is to be given to the objection that the provisions assailed are obnoxious to section 20, art. 2, of the Constitution, which requires that "every act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title." This court has held that the codification of the statutes adopted in 1882 under the requirements of the constitution is valid, notwithstanding it did not relate to but one subject, and was without a title. *Woodsides* v. *McDaniel,* 19 *S. C.,* 114.

Nor do we think that the objection to the word "license" is well taken. It was used in giving the reasons for the ruling, and was not the ruling itself. But the word was forcible, and calculated to convey the idea with clearness. It is manifest that the judge meant precisely what was said in the case of the *C. & G. R. R. Co.* v. *Gibbes,* 24 *S. C.,* 60, "that corporations are artificial bodies, creatures of the State, and as the State may or may not call them into existence, so she may limit their existence and mould and form them in precise accordance with her view of what is right or politic." If by the phrase "special legislation" is

meant simply legislation which does not apply to all, then the grant of every charter is an act of special legislation. But if it is intended to express the idea of unjust discrimination in establishing a rule of law for incorporations different from that under which other "persons" are judged "under like conditions," it seems to be assumed that as soon as a corporation is created it necessarily has the same rights in all respects as a natural person, when, in fact, it has only the rights, more or less, which are consistent with its charter. The provision does apply to all "under like conditions," to all railroads, whether owned and operated by individuals or corporations. *State* v. *Berlin*, 21 *S. C.*, 292.

The franchise cannot exist without the authority of the State, and in granting it the State may, for the protection of the public, reserve the right of future control; and in such case, when that right is exercised, it cannot be held to be oppressive or unconstitutional. The Northeastern Railroad Company was chartered in 1851, subject to the 41st section of the act of 1841, which provided: "That it shall become part of the charter of every corporation, which shall at the present, or any succeeding session of the general assembly receive a grant of a charter, or any renewal, amendment, or modification thereof, * * * that every charter of incorporation granted, renewed, or modified, as aforesaid, shall at all times remain subject to amendment, alteration, or repeal by the legislative authority." The constitution of 1868 (sec. 5, art. XII.) also provides that the laws "shall regulate the public use of all franchises which have heretofore been, or hereafter may be, created or granted by or under the authority of the State." So that there can be no doubt whatever that the company accepted its charter subject to amendment by the legislature.

But it is said that the provision in regard to the proof of negligence was not really an amendment of the charter, but a change in the law of evidence. If this were so, it would not make it unconstitutional. "The right to have one's controversies determined by existing rules of evidence is not a vested right. Like other rules affecting the remedy, they must therefore at all times be subject to modification and control by the legislature." *Cool. Con. Lim.*, 452, 453. We do not, however, consider that by the aforesaid provision the main object of the legislature was to

make a change in the law of evidence, but to induce compliance with the previous requirement as to signals. The rule of evidence as to negligence was made to apply only in case of failure to give the required signals, and it is manifest that the purpose was to give an additional sanction to the provision requiring the signals to be given.

Besides the matter of charter and vested right, Mr. Pierce says: "A railroad company, although no power is reserved to amend or repeal its charter, is nevertheless subject, like individuals, to such police laws as the legislature may from time to time enact for the safety and health of citizens and the general convenience and good order. Its property and essential franchises are, indeed, protected by the constitution; but the company itself is not thereby placed above the laws. It was not the design of that instrument to disarm the States of the power to pass laws to protect the lives, limbs, health, and morals of citizens and to regulate their conduct towards each other, and the mode of using property so that different owners may not injure each other. Such laws may incidentally impair the value of franchises or of rights held under contracts, but they are enacted *diverso intuitu*, and are not within the constitutional inhibition." *Pierce on Railroads*, p. 460, and numerous authorities. *Cooley Con. Lim.*, 710; *People ex rel. Kimball* v. *B. & A. R. R. Co.*, 70 *N. Y.*, 570; *State* v. *Berlin*, 21 *S. C.*, 292; *Messenger* v. *Penn. R. R. Co.*, 36 *N. J.*, 407.

In the case last cited Chief Justice Beasley, of the Supreme Court of New Jersey, expressed it thus: "A company of this kind is invested with important prerogative franchises, among which are the rights to build and use a railway, and to charge and take tolls and fares. These prerogatives are grants from the government, and public utility is the consideration for them. Although in the hands of a private corporation, they are still sovereign franchises, and must be used and treated as such. They must be held in trust for the general good." We do not think it was error in law to hold that the sections aforesaid were constitutional.

Exceptions 10 and 11 allege error only in disconnected parts of the charge, which are cited. They are too general. We have

read the charge as a whole with care, and we must say that we agree with the judge, that it "leaned slightly to the side of the defendant." At least, we have not been able to discover wherein the defendant has a right to complain of it.

Exceptions 12 and 13, *a*, *b*, *c*, allege that the judge, undertaking to state to the jury the facts of the case, confined his statement to only a part of the testimony, which was misleading. We cannot consider such matters as good cause for setting aside a verdict. In the conduct of a cause below, something must be left to the judgment and impartial discretion of the trial judge. *McPherson* v. *McPherson*, 21 *S. C.*, 261.

Exceptions 15 and 16 complain that the judge committed error in suggesting a hypothetical case. He charged, "that it is not material in law whether the injury results from direct collision or the damage is done by the injured one being thrown under the train, without actual collision with the wagon." We cannot say that this was entirely hypothetical or erroneous. See *Dyer* v. *Erie Railroad Co.*, 71 *N. Y.*, 228; *Prescott* v. *Eastern R. R. Co.*, 113 *Mass.*, 370. "If the neglect of the duties incumbent on the defendants caused the plaintiff to approach so near the passing train that his horse took fright from it, and the injury thereby occurred, he being in the exercise of due care, the defendants' negligence was such a proximate cause of the injury that they are liable therefor, although the circumstances of the rush of the train and the fright of the horse intervened between the negligence and the injury."

Exceptions 17, 18, and 19 are aimed at certain reasons assigned by the judge for refusing to grant the motion for a new trial. The judge did not refuse the motion on the ground that he had not the power to grant it, but on the merits; and whether the views he expressed as leading him to that conclusion were or were not satisfactory, they are no part of the case upon appeal in this court. *Warren* v. *Lagrone*, 12 *S. C.*, 51.

Exceptions 20, 21, and 22 substantially complain that the judge erred "in suffering judgment to be entered on the verdict when the proof of negligence was confined to the alleged omission of certain statutory signals, and the complaint did not allege the fact of the omission of either of the said statutory signals, which

constituted the cause of action." We think it a misapprehension to suppose that the omission of the statutory signals was alone relied on as the cause of action, or that the proof of negligence was "confined" to them. The complaint alleged that the defendant "carelessly and negligently" caused the injury to the plaintiff, and the defendant, making no objection to the form of the complaint, answered, denying that "at any time or in any way the plaintiff was injured by the negligence or carelessness of the defendant." This made the issue. This is a civil action for damages, and there was no necessity for the same reiteration and specification in detail which is required in an indictment for a criminal offence. "In actions for negligence a general allegation is necessarily allowable, the ultimate fact pleaded, *i. e.*, the fact to be established by evidence, is negligence. Facts, and not evidence of them, must be pleaded." *Bliss Code Pl.*, § 211; 2 *Thomp. Negl.*, § 22.

But in considering the grounds for a non-suit we have already determined the nature of this action, and we will not repeat what was there said. In the view there expressed, "the complaint contains allegations entirely sufficient to sustain the verdict," and that being the case we know of no principle or practice which would have justified the judge in directing that it should not be entered. Section 286 of the Code provides that "upon receiving a verdict, the clerk shall make an entry in his minutes, specifying * * * the verdict, and either the judgment entered thereon or an order that the cause be reserved for argument or further consideration. If a different direction be not given by the court, the clerk must enter judgment in conformity with the verdict." It was certainly proper to withhold the judgment until the motion for a new trial was heard, but that was refused, and the judge declining to give a different direction, the judgment was entered in conformity with the verdict, which, as we have held, is supported by the record.

We cannot consider this as a motion within a year under section 195 of the Code to relieve a party from a judgment taken against him through mistake, inadvertence, surprise, or excusable neglect, &c. The relief allowed by that section "is only given to parties who, by reason of some mistake or inadvertence, may

have lost the opportunity to be present at the trial. In this case the defendants were ably represented at the trial and made vigorous defence." *Steele* v. *C., C. & A. R. R. Co.*, 14 *S. C.*, 331. So we say in this case. The defendants were present at the trial, and their defence has been conducted with industry, ability, and indomitable perseverance. The point is purely technical. There has been no surprise whatever. The defendants were not ignorant of the requirements of the statutes; indeed, were properly acting in obedience to them, and the case from the beginning to the end was conducted in all respects as if the complaint had referred in express terms to the aforesaid statutes and their requirements. We conclude in the words of Chief Justice Parker in delivering the judgment of the court in the case of *Williams* v. *H. & Q. Bridge and Turnpike Corp.*, *supra :* "It is always unpleasant to arrest the course of judicial proceedings on account of (alleged) defects, which have nothing to do with the real merits of the matter in dispute."

The judgment of this court is, that the judgment of the Circuit Court be affirmed.